Richard J. McCord, Esq.
Robert D. Nosek, Esq.
CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to Secured Creditor ECapital Loan Fund III LP
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
Phone: (516) 296-7000
Facsimile: (516) 296-7111

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

OUTPOST PINES LLC,

Debtor.
-----------------------------------------------------------X

Chapter 11
Case No. 23-70617-reg

**OBJECTION TO PLAN OF**
**<u>REORGANIZATION DATED MARCH 1, 2023</u>**

TO: THE HONORABLE ROBERT E. GROSSMAN
UNITED STATES BANKRUPTCY JUDGE:

ECapital Loan Fund III LP ("ECapital"), as secured creditor and party in interest, by and through its counsel, Certilman Balin Adler & Hyman, LLP, hereby objects to the Plan of Reorganization, dated March 1, 2023 [ECF Doc. No. 22] (the "Plan"), filed and offered by Outpost Pines LLC (the "Debtor"), and respectfully sets forth and represents as follows:

1. ECapital objects to the Plan in that it proposes to cure the Debtor's default on its loan without having to pay outstanding interest calculated at the default interest rate under the loan documents. ECapital respectfully submits that the provisions of the Bankruptcy Code, case law interpreting the applicable sections, and the terms and conditions of the loan documents all require the payment of default interest as part of curing a default on a loan, and non-bankruptcy law does not run counter.

**<u>Pre-Petition Loan</u>**

2. On or about March 31, 2015, the Debtor executed an Amended and Restated

Secured Promissory Note in favor of Progressive Credit Union ("Progressive") dated March 31, 2015 (the "Note"), in the original principal amount of $8,000,000.00 (the "Loan"). A copy of the Note is annexed hereto as **Exhibit A**. The Note was accompanied by an Amended and Restated Fee and Leasehold Mortgage, Extension Agreement, Assignment of Leases and Rents, Security Agreement and Spreader Agreement, with the Debtor as mortgagor and Progressive as mortgagee, dated March 31, 2015 (the "Mortgage") which secures the Note. A copy of the Mortgage is annexed hereto as **Exhibit B**.

3. Thereafter, prior to the Debtor commencing this bankruptcy case, as a successor by merger, Pentagon Federal Credit Union ("PenFed") became the holder of the Note and Mortgage.

4. On or about October 1, 2020, the Debtor defaulted on the Loan as a result of failing to make the payment due under the Loan on September 1, 2020. On or about March 3, 2021, the Debtor was provided notice of an Event of Default based on its failure to pay the September 1, 2020 payment. On or about January 18, 2022, the Debtor was provided notice of an Event of Default based on its failure to pay the October 1, 2020 payment.

5. Pursuant to the Assignment of Mortgage dated November 4, 2022, Pen Fed assigned its interest in the loan to ECapital.

6. The Note provides, among other things, that "[u]pon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate through and after the entry of a Judgment of Foreclosure and Sale[.]" Note 4.2. The Default Rate under the Note is "a rate equal to sixteen percent (16%) per annum" accruing "on the outstanding Principal Sum[.] (the "Default Rate")" Note 4.4. The Default Rate "shall remain in effect until any and all events of Default shall have been cured." *Id.* Accordingly, the Note and Mortgage provide ECapital with the right to payment of the Default Rate.

**Proposed Plan Treatment**

7. The Debtor has assigned ECapital's Loan Claim to Class 2 in the Plan, and "estimates that principal, non-default contract rate of interest, amortization, advances and other charges total approximately $8,602,228 as of the Petition Date." Plan ¶ 45.

8. The Debtor proposes the following treatment for the Loan:

> On the Effective Date, pursuant to section 1124(2) of the Bankruptcy Code, the Debtor shall cure pre-Petition Date and post-Petition Date monetary defaults, if any, and then comply with its obligations under the applicable loan documents through maturity.

*Id.* at ¶ 46. The Plan further provides that because of such treatment, the Loan is "[u]nimpaired and [ECapital is] deemed to have accepted the Plan. *Id.* at ¶ 47.

9. The Plan states that "a breakdown of the [Loan] Claim" is attached to the Plan as Exhibit A. However, the Plan filed with the Court does not include such attachment.

10. Moreover, the Plan does not state the manner and amount in which the Debtor proposes to cure the defaults that exist under the Loan. It merely states that the Debtor will cure the defaults. ECapital submits that any curing of the existing defaults will require the Debtor to pay all of the amounts to which ECapital is entitled under the Loan Documents, including, but not limited to, accrued default interest.

11. On March 1, 2023, the Debtor filed its Disclosure Statement for the Plan [ECF Doc. No. 23] (the "Disclosure Statement"), which was approved by the Court as containing "adequate information" by order entered April 6, 2023 [ECF Doc. No. 32].

12. The Disclosure Statement states with regard to the cure cost on the ECapital Loan that it "projects that the ultimate cure cost to reinstate the Loan will be between $1,254,674 and $3,108,142 for interest, amortization, escrow replenishments, legal fees and late fees." Dis. Stat. ¶ 21.

13. Annexed to the Disclosure Statement is an untitled document which appears to

contain two separate "Interest Due" calculations, one for "Outpost" and one for "E-Capital." A copy of that Claim Information is annexed hereto as **Exhibit C**.

14. The Disclosure Statement also asserts that ECapital objects to confirmation of the proposed Plan because of the default interest issue and previews its own arguments as to why the Debtor should be allowed to pay less than the amount required under the ECapital Loan Documents in order to cure its defaults. *See* Dis. Stat. ¶¶ 24-35.

15. The Debtor concedes that ECapital is oversecured. *See* Disc. Stat. ¶ 18 (referencing an appraisal "establishing a $13,500,000 fair market asset value, far more than the amount owed to [ECapital] under any analysis."). Based on the information provided by the Debtor in the aforementioned Disclosure Statement, the Debtor claims to be a solvent debtor (*see* Disc. Stat. Ex. B "Assets and Liabilities") and it offers projections of positive net income reflecting its ability to pay its future debts as they become due. *See* Disc. Stat. ¶¶ 57, 65 and Ex. A, B.

16. It has come to ECapital's attention that on or about May 11, 2023, the Town of Brookhaven filed a condemnation notice on the Debtor's property, and closed off access to the hotel/motel. See Exhibit D.

17. The Debtor did not make reference in the aforementioned Disclosure Statement and proposed Plan to any Town of Brookhaven code violations or even the possibility of a condemnation proceeding taking place.

18. Based on the condemnation, the Debtor will be unable to generate income from this property, i.e. hotel/motel, thereby rendering the projections void of positive net income and its ability to pay its future debts as they become due..

19. ECapital also objects to the confirmation of this Plan based on the aforementioned condemnation of the Debtor's property by the Town of Brookhaven thereby rendering the

Debtor's statements and projections in this Plan to be inaccurate.

20. ECapital objects to the Plan as it does not provide for the full amount of ECapital's claim against the Debtor, which amount includes accrued interest calculated at the Default Rate from the date the Debtor defaulted to the present as well as it contains inaccurate income projections.

**Bankruptcy Code Provisions Regarding Curing of Loan Defaults**

21. Section 1123 of the Bankruptcy Code gives debtors in possession the roadmap for provisions to include in their proposed plan, specifically including provisions addressing "curing or waving any default" as part of the plan's implementation. 11 U.S.C. § 1123(a)(5)(G).

22. Separately, proposed plans may "impair or leave unimpaired any class of claims, secured or unsecured[.]" 11 U.S.C. § 1123(b)(1). With exceptions not relevant here, a debtor in possession may propose a plan that, among other things, "modif[ies] the rights of secured claims." 11 U.S.C. 1123(b)(5). However, the Bankruptcy Code is also very specific as situations which require a debtor to propose a plan that includes the curing of a default. If the offered plan includes a provision to cure a default, "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d). Section 1123(d) was added to the Bankruptcy Code in 1994.

23. Section 1124 of the Bankruptcy Code addresses when a claim is considered impaired or unimpaired. That section sets forth when a class of claims is considered "impaired" or unimpaired. If such plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitled the holder of such claim or interest" (11 U.S.C. § 1124(1)), then the class of claims will not be impaired. That means if the proposed plan does not take away or modify a creditor's contractual rights, then that creditor's claim will be unimpaired. However, Section 1124(a) goes on to provide that as long as a debtor does not alter any other provisions of

loan documents except for reinstatement of a claim, then such claim will also not be considered impaired. See 11 U.S.C. § 1124(2). The primary distinction between impaired and unimpaired is that such status determines whether the holder of a claim or interest is allowed to vote for a proposed plan. *See* 11 U.S.C. § 1126(f) (unimpaired class "conclusively presumed to have accepted the plan[.]"); § 1129(a)(7) (addressing acceptance of a plan by holder of a claim in an impaired class).

24. As part of its Disclosure Statement, the Debtor offers several cases allegedly to support its assertion that it should not have to pay accrued default interest as part of its cure in reinstating the Loan. *See* Disc. Stat. ¶¶ 24-28. The legal position underlying the Debtor's case relies almost entirely on cases which pre-date the addition of Section 1123(d) to the Bankruptcy Code, *see, i.e.*, *In re Taddeo*, 685 F.2d 24 (2d Cir.1982); *accord*, *In re Forest Hills Associates*, 40 B.R. 410 (Bankr. S.D.N.Y. 1984); *In re Manville Forest Products Corp.*, 43 B.R. 293 (Bankr. S.D.N.Y. 1984); *In re Kizzac Management Corp.*, 44 B.R. 496 (Bankr. S.D.N.Y. 1984), and the dissent in a 9th Circuit Court of Appeals case, *Pacifica L 515 LLC v. New Investments Inc. (In re New Investments, Inc.)*, 840 F.3d 1137, 1143-46 (9th Cir. 2016).

25. However, since the addition of Section 1123(d), and the similar Section 1322(e), to the Bankruptcy Code, the substantial weight of cases find that default interest is required as part of a cure payment as long as the underlying loan documents provide for it. *See, e.g.*, *In re Sagamore Partners, Ltd.*, 620 Fed.Appx. 864 (11th Cir. 2015); *New Investments*, 840 F.3d at 1142 ("The parties bargained for a higher interest rate on the note in the event of default, and Pacifica is entitled to the benefit of that bargain under the terms of § 1123(d)"); *In re Moshe*, 567 B.R. 438 (Bankr. E.D.N.Y. 2017); *In re General Growth Prop. Inc.*, 451 B.R. 323, 327-29 (Bankr. S.D.N.Y. 2011); *In re 139-141 Owners Corp.*, 306 B.R. 763 (Bankr. S.D.N.Y. 2004) *cf.* *In re Adjobi*, 404 B.R. 78, 80-82 (Bankr. E.D.N.Y. 2009) (finding default interest must be paid in

curing default through chapter 13 plan). *Accord In re LATAM Airlines Group S.A.*, 55 F.4th 377, 386 (2d Cir. 2022) ("Because Section 1124(1) does not refer to cure and reinstatement, we find no guidance in these authorities considering the interaction of Sections 1124(2) and 1123(d).").

26. The Debtor's theory relies on an interpretation of "cure" that in effect puts the defaulting borrower back in the place pre-default thereby ignoring and wiping out all of the consequences that arise because of the default as if they never occurred. *See, e.g.*, *Taddeo*, 685 F.2d at 26-27; *New Investments*, 840 F.3d at 1143 (quoting *Great Western Bank v. Entz-White Lumber & Supply, Inc. (In re Entz-White Lumber & Supply, Inc.)*, 850 F.2d 1338, 1340 (9th Cir. 1988) (dissent). That interpretation, however, requires one to rewrite or alter express provisions of the underlying loan documents, which is at odds with § 1124(2)(E)'s requirement that any cure may not "otherwise alter the legal, equitable , or contractual rights" of a creditor." *New Investments*, 840 F.3d at 1142 ("Here, one of those rights is post-default interest, and New Investments's cure may not alter that right").

27. Thus, § 1124(2) allows a defaulted debtor with an accelerated loan to get itself back to a pre-default state, but § 1123(d) sets forth the monetary terms on which it must comply in order to complete that journey. *Id.* ("Consistent with § 1124(2), the debtor can return to pre-default conditions, which can include a lower, pre-default interest rate, only by fulfilling the obligations of the underlying loan agreement and applicable state law. 11 U.S.C. § 1123(d).").

28. As discussed above, the Loan Documents clearly provide for the Default Rate. Moreover, "[u]nder New York, an interest rate that increases following a default is generally not characterized as a penalty." *In re 1111 Myrtle Ave. Grp., LLC*, 598 B.R. 729, 741 (Bankr. S.D.N.Y. 2019); *Jamaica Sav. Bank v. Ascot Owners, Inc.*, 245 A.D.2d 20, 665 N.Y.S.2d 858 (Sup. Ct. App. Div. 1997).

29. Accordingly, it is clear that in order for the Debtor to cure its defaults under the Loan through the Plan, it must include the payment of accrued interest at the Default Rate as part of the calculation of the cure amount.

**<u>The Debtor Failed to Comply with Provisions of U.S.C. §1125 Regarding Disclosure Statement</u>**

30. In failing to disclose this information, the Debtor has materially misrepresented the facts with respect to the current status of the Debtor. The Debtor has failed to provide adequate information for a creditor or party in interest to make an informed decision on whether to accept or reject the herein proposed Plan.

31. 11 U.S.C. §1125(a)(2)(b) states "An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written Disclosure Statement approved, after notice and a hearing, by the court as containing adequate information." It is respectfully submitted that the Debtor has mislead this Court, the creditors and all parties in interest by failing to include in its Disclosure Statement, any information in the Debtor's possession leading up to and including the ultimate condemnation of the hotel/motel property. It is respectfully submitted that this Court should deny confirmation of this Plan due to the Debtor's failure to provide both the kind and form of information that would be in sufficient detail that a reasonable and typical investor can make an informed judgment about the plan.

**<u>Debtor's Plan of Reorganization Does Not Comply with all Provisions of 11 U.S.C. §1129</u>**

32. By failing to disclose the events leading up to and the ultimate condemnation of the Debtor's property, the Debtor is not in compliance with the provisions of 11 U.S.C. §1129.

The Debtor's projections of income to fund the plan are inaccurate. The plan is not feasible nor was it submitted in good faith and the court should deny confirmation of the Plan.

**Bad Faith Filing of Disclosure Statement and Plan of Reorganzation**

33. The Debtor has failed to comply with 11 U.S.C. §327- Employment of Professional Persons- in failing to obtain authorization from the Court to retain an engineer to prepare a report regarding the existence of building code violations. Upon information and belief, the Debtor retained an engineer to perform these services approximately one month ago. It is respectfully submitted that the Debtor acted in this manner to conceal potential building code violations from the Court and creditors.

34. ECapital has recently discovered that the Debtor failed to disclose that the principals of the related companies can withdraw their support to fund the plan at any time. There is no affidavit binding them to the commitment to fund the Plan.

35. It appears in the instant matter that the Debtor filed this case, the Disclosure Statement and Plan without the intent to follow through with the terms contained therein.

36. The Debtor acted in bad faith because it failed to disclose information leading up to the condemnation of the hotel motel property and also the fact that the debtor ordered an engineer's report to get the property in compliance without obtaining court approval. All of which is a material misrepresentation of the facts as they exist at this time. See Exhibits A and B annexed to the Disclosure Statement and Plan [Dkt. 22 & 23].

37. It is respectfully submitted that an entity that files bankruptcy is expected to do so in good faith, to use the process the way it is intended to be used, and as a way to help a Debtor get back its financial feet. It is submitted any known misrepresentations or omissions of information can be bad faith as well as any other attempt to take advantage of the bankruptcy process.

38. It is submitted that Bankruptcy Courts look at the totality of the circumstances as the standard to determine bad faith. There are many factors that the Courts use in applying the standard of totality of circumstances: 1. Misrepresentations or omissions; 2. Feasibility of repayment of the plan; 3. Failure to comply with procedures after filing the case; and 4. Any other egregious conduct. Here it is respectfully submitted that the Debtor's failure to include in the Disclosure Statement or the Plan, any reference to events leading up to and including the condemnation of the hotel/motel property is a material misrepresentation and egregious conduct.

39. It is submitted that this condemned hotel/motel is a material part of E-Capital's collateral and the Debtor is required pursuant to the Loan Documents to maintain in proper order i.e. compliance with the Town of Brookhaven. The Loan Documents also reflect additional defaults if the Debtor fails to operate the business. Additional defaults of material adverse financial changes to the business, properties, or financial condition of the mortgagor is another event of default in the Loan Documents.

40. In the instant matter, as a result of the condemnation of this hotel/motel, the income projections filed in support of the Plan are inaccurate. See Exhibits A & B to the Disclosure Statement [Dkt. 22 & 23].

**WHEREFORE**, ECapital respectfully requests that the Court deny confirmation of the Plan on the basis that the Plan does not comply with Sections 1123(d), 1125(a) and 1129(a) of the Bankruptcy Code.

Dated: East Meadow, New York
May 17, 2023

CERTILMAN BALIN ADLER &
HYMAN, LLP
Counsel to ECapital Loan Fund III LP
/s/Richard J. McCord
**RICHARD J. MCCORD, ESQ.**
**Robert D. Nosek, Esq.**
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
(516) 296-7000