Mark Frankel
Backenroth Frankel & Krinsky, LLP
488 Madison Avenue, Floor 23
New York, New York 10022
(212) 593-1100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                           Chapter 11

    Outpost Pines LLC                        Case no. 23-70617 (REG)

             Debtor.
--------------------------------------------------------x

## **AMENDED PLAN OF REORGANIZATION**

## INTRODUCTION

Outpost Pines LLC ("Debtor"), proposes this Plan of Reorganization to its Creditors.  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.      "Administrative Expense" Any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

2.      "Administrative Expense Claim" shall mean a Claim for payment of an Administrative Expense.

3.      "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

4.      "Allowed Amount" shall mean the amount of a Claim:  (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

2

5.      "Allowed Claim" shall mean a Claim: (a) to the extent that a Proof of Claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

6.      "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

7.      "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

8.      "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

9.      "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.

10.      "Bankruptcy Court" shall mean the Court as defined below.

11.      "Bar Date" shall mean April 10, 2023.

12.      "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

13.      "Claim" shall have the meaning set forth in § 101(5) of the Bankruptcy Code.

14.      "Claimant" shall mean the holder of a Claim.

15.      "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

16.     "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

17.     "Confirmation Order" shall mean the order of the Court confirming the Plan.

18.     "Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

19.     "Creditor" shall mean any entity that holds a Claim against the Debtor.

20.     "Debtor" shall mean Outpost Pines LLC.

21.     "Disclosure Statement" shall mean the disclosure statement filed in connection with the Plan.

22.     "Disputed Claim" shall mean the whole or any portion of any Claim against the Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

23.     "Disputed Claim Reserve" shall mean Cash to be set aside by the Debtor on the Effective Date in an amount equal to the amount that would have been distributed to the holders of Disputed Claims had such Claims been deemed Allowed Claims on the Effective Date, or in such other amount as may be approved by the Bankruptcy Court.

24.     "Effective Date" shall mean the Date upon which the Confirmation Order is entered, or such other date no later than 60 days after the Confirmation Order is entered as may be practicable.

25.     "Estate" shall mean the estate of the Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

26.     "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

27.     "Final Order" shall mean an order of a court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

28.     "Impaired" shall mean not Unimpaired.

29.     "Interest" shall mean an existing ownership interest in the Debtor.

30.     "Interest Holder" shall mean a holder and owner of an existing Interest in the Debtor.

31.     "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

32.     "Lien" shall mean a valid and enforceable charge against or interest in property to secure payment of a debt or performance of an obligation.

33.     "Mortgagee" shall mean ECapital Loan Fund III LP.

34.     "Petition Date" shall mean February 23, 2023.

35.     "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

36.     " Properties" shall mean 49 and 56 Picketty Ruff Walk, Sayville, NY 1178241-45 Picketty Ruff Walk, Sayville, NY 1178237 Fire Island Boulevard, Sayville, NY 1178216 Atlantic Walk, Sayville, NY 1178228 Atlantic Walk, Sayville, NY 11782.

37.     "Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent provided in Section 506 of the Bankruptcy Code.

38.     "Secured Creditor" shall mean the owner or holder of a Secured Claim.

39.     "Settlement Agreement" shall mean the agreement attached to the Plan as Exhibit B.

40.     "Unimpaired" shall mean not impaired under section 1124 of the Bankruptcy Code.

41.     "Unsecured Claim" shall mean a Claim that is not a Secured Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include Administrative Expense Claims.

42.     "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION AND TREATMENT

### Class 1

43.     **Classification** – Real estate tax Liens..  Class 1 Claims total approximately $103,619.

44.     **Treatment** -- Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

45.     **Voting** – Unimpaired and deemed to have accepted the Plan.

## Class 2

46.     **Classification** – Allowed Secured Claims of the Mortgagee.  Annexed to the Plan as Exhibit A is a breakdown of the Claim.  The Debtor estimates that principal, non-default contract rate of interest, amortization, advances and other charges total approximately $8,602,228 as of the Petition Date.

47.     **Treatment** – The Mortgagee is entitled to the rights and consideration set forth in the Settlement Agreement annexed to the Plan as Exhibit B.

48.     **Voting** – Unimpaired and deemed to have accepted the Plan.

## Class 3

49.     **Classification** – .Allowed Secured Claims of the Small Business Administration.  The Debtor estimates that $161,941 is due as of the Petition Date secured by the Debtor's personal property.

50.     **Treatment** – On the Effective Date, pursuant to section 1124(2) of the Bankruptcy Code, the Debtor shall cure pre-Petition Date and post-Petition Date monetary defaults, if any, and then comply with its obligations under the applicable loan documents through maturity.

51.     **Voting** – Unimpaired and deemed to have accepted the Plan.

### Class 4

52.    **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6), and (7) of the Bankruptcy Code.  Claims total approximately $0.

53.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

54.    **Voting --** Unimpaired and deemed to have accepted the Plan..

### Class 5

55.    **Classification** – General Unsecured Claims.  Claims total approximately $1,557,421.

56.    **Treatment** – Unless a particular creditor agrees to defer payment, payment in full in Cash plus interest through the payment date in two installments, with the first installment due three months after the Effective Date, and the second payment due six months after the Effective Date.  Insiders holding a $1,549,221 Claim have agreed to defer payment until maturity or satisfaction of the Mortgagee's Loan.  An Affidavit evidencing that agreement shall be submitted to the Court before the Confirmation Hearing.  Thus, the General Unsecured Claims to be paid in Cash under the Plan total $8,200.

57.    **Voting** –   Impaired and entitled to vote to accept or reject the Plan.

### Class 6

58.    **Classification** – Allowed Interests Holders.

59.    **Treatment** – Interest Holders shall be required to contribute the funds necessary, if any, to make Effective Date payments under the Plan and shall retain their Interests under the Plan.  Interest Holders are entitled to the rights and consideration set forth in the settlement agreement annexed to the Plan as Exhibit B.

60.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## UNCLASSIFIED PRIORITY TAX CLAIMS

61.    Priority tax Claims under Section 507(a)(8) of the Bankruptcy Code by Debtor, if any, shall be entitled to payment in Cash on the Effective Date of Allowed Amount, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

## ADMINISTRATIVE EXPENSES

62.    Allowed Administrative Expense Claims, including professional fees, shall be paid in full in Cash on the later of the Effective Date and the date such Administrative Expense Claim becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense Claim agrees to a different treatment; provided, however, that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of business or under Executory Contracts assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  The Debtor estimates that through the entry of a final decree in this case, Allowed Administrative Expenses will total approximately $115,000.

63.     Any outstanding U.S. Trustee fees and any statutory interest thereon shall be paid in full in Cash on the Effective Date.  Thereafter, United States Trustee fees and any statutory interest thereon shall be paid until entry of final decree or until Bankruptcy Case is converted or dismissed.  The Debtors shall file quarterly post-Confirmation operating reports.

## MEANS FOR IMPLEMENTATION

64.     **Source of Funds** – Effective Date Plan payments will be paid from cash on hand.  Post Effective Date Plan payments will be paid pursuant to the Settlement Agreement annexed to the Plan as Exhibit B.

65.     **Settlement Agreement** – To the extent the terms of the Settlement Agreement are inconsistent with the terms of this Plan, the terms of the Settlement Agreement control.

66.     **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

67.     **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

68.     **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

69.     **Preservation of Claims** -- All rights pursuant to sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to section 547 of the Bankruptcy Code, all fraudulent transfer claims pursuant to sections 544 and 548 of the Bankruptcy Code, and all claims relating to post-Petition Date transactions under section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate, provided, however, that the Debtor shall have sole authority for prosecuting any such claims. Because all creditors are being paid in full under the Plan, the Debtor does not anticipate preference or fraudulent claims.

70.     **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code by section 1146(c), the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan, (including any instrument of transfer executed in furtherance of the sale contemplated by the Plan), shall not be subject to tax under any law imposing a stamp tax or similar tax.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

71.     The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 60 days after the Effective Date.  On the initial distribution date

11

and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

72.    Except for executory contracts and unexpired leases the Debtor rejects before the Confirmation Date, all unexpired leases and executory contracts shall be assumed under the Plan.  In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the rejection date. All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## RETENTION OF JURISDICTION

73.    Retention of Jurisdiction.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to each Debtor's Bankruptcy Case to the fullest

extent permitted including, but not limited to, with respect to section 1142 of the Bankruptcy

Code and proceedings:

- To consider any modification of the Plan under Section 1127 of the Bankruptcy Code;

- To hear and determine all Claims, controversies, suits and disputes against the Debtor to the full extent permitted under 28 U.S.C. §§157 and 1334;

- To hear, determine and enforce all Claims  and causes of action which may exist on behalf of the Debtor or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate to recover assets pursuant to the provisions of the Bankruptcy Code;

- To hear and determine all requests for compensation and/or reimbursement of expenses which may be made;

- To value assets of the Estate.

- To enforce the Confirmation Order, the final decree, and all injunctions therein;

- To enter an order concluding and terminating the Bankruptcy Case;

- To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

- To determine all questions and disputes regarding title to the assets of the Debtor.

- To re-examine Claims which may have been Allowed or disallowed for purposes of voting, and to determine objections which may be filed to any Claims.

## **GENERAL PROVISIONS**

74.  **Headings**.  The headings in the Plan are for convenience of reference only

and shall not limit or otherwise affect the meaning of the Plan.

75.    **Disputed Claims**.  The Debtor shall hold in escrow the distribution that would be due on account of any Disputed Claim.  No Disputed Claims shall be paid until such Claim becomes an Allowed Claim.

76.    **Calculation of Time Periods**.  Bankruptcy Rule 9006 is incorporated herein for purposes of calculating the dates set forth herein.

77.    **Other Actions**.  Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

78.    **Modification of Plan**.  The Debtor may seek amendments or modifications to the Plan in accordance with Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND DISCHARGE

79.    **Injunction**.  The Confirmation of this Plan shall constitute an injunction of the Court against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Debtor or its property or properties, any obligation or debt except pursuant to the terms of the Plan.

80.    **Discharge.**  On the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, the Plan shall:  (i) discharge the Debtor and any of its assets from all Claims, demands, liabilities and other debts that arose on or before the Effective

Date, including, without limitation, all debts of the kind specified in Section 502 of the Bankruptcy Code, whether or not (A) a proof of Claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code, (B) a Claim based on such debt is Allowed pursuant to Section 502 of the Bankruptcy Code, (C) a Claim based on such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based on such debt has accepted this Plan; and (ii) preclude all entities from asserting against the Debtor or any of its assets any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, all pursuant to Sections 524 and 1141 of the Bankruptcy Code. The discharge provided in this provision shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim. The Debtor shall be discharged from any Claims and agreements related to debts that arose on or before the Effective Date and such debts, Claims and agreements are deemed restructured and new as set forth in the Plan.

## <u>CLOSING THE BANKRUPTCY CASE</u>

81.     Upon substantial consummation, the Debtor may move for a final decree to close the Bankruptcy Case and to request such other orders as may be just.

Dated:  New York, New York
        September ___, 2023

Outpost Pines LLC

By:    <u>s/ PJ McAteer, as Authorized Signatory</u>

BACKENROTH FRANKEL & KRINSKY, LLP
Attorneys for Debtor

By:    <u>s/Mark A. Frankel</u>
       800 Third Avenue
       New York, New York 10022
       (212) 593-1100

Exhibit A

| Month | OUTPOST INTEREST DUE | OUTPOST PRINCIPAL DUE | OUTPOST TOTAL DUE | E-CAPITAL INTEREST DUE | E-CAPITAL PRINCIPAL DUE | E-CAPITAL TOTAL DUE |
|---|---|---|---|---|---|---|
| Apr-20 | Forbearance | Forbearance | Forbearance | Forbearance | Forbearance | Forbearance |
| May-20 | Forbearance | Forbearance | Forbearance | Forbearance | Forbearance | Forbearance |
| Jun-20 | Forbearance | Forbearance | Forbearance | Forbearance | Forbearance | Forbearance |
| Jul-20 | Forbearance | Forbearance | Forbearance | Forbearance | Forbearance | Forbearance |
| Aug-20 | Forbearance | Forbearance | Forbearance | Forbearance | Forbearance | Forbearance |
| Sep-20 | Forbearance | Forbearance | Forbearance | Forbearance | Forbearance | Forbearance |
| Oct-20 | 18,721.16 | 16,000.00 | 34,721.16 | 18,721.16 | 16,000.00 | 34,721.16 |
| Nov-20 | 18,117.25 | 16,000.00 | 34,117.25 | 18,117.25 | 16,000.00 | 34,117.25 |
| Dec-20 | 18,721.16 | 16,000.00 | 34,721.16 | 18,721.16 | 16,000.00 | 34,721.16 |
| | **55,559.57** | **48,000.00** | **103,559.57** | **55,559.57** | **48,000.00** | **103,559.57** |
| Jan-21 | 18,721.16 | 16,000.00 | 34,721.16 | 18,721.16 | 16,000.00 | 34,721.16 |
| Feb-21 | 16,909.43 | 16,000.00 | 32,909.43 | 16,909.43 | 16,000.00 | 32,909.43 |
| Mar-21 | 18,721.16 | 16,000.00 | 34,721.16 | 42,947.80 | 16,000.00 | 58,947.80 |
| Apr-21 | 18,117.25 | 16,000.00 | 34,117.25 | 96,625.33 | 16,000.00 | 112,625.33 |
| May-21 | 18,721.16 | 16,000.00 | 34,721.16 | 99,846.18 | 16,000.00 | 115,846.18 |
| Jun-21 | 18,117.25 | 16,000.00 | 34,117.25 | 96,625.33 | 16,000.00 | 112,625.33 |
| Jul-21 | 18,721.16 | 16,000.00 | 34,721.16 | 99,846.18 | 16,000.00 | 115,846.18 |
| Aug-21 | 18,721.16 | 16,000.00 | 34,721.16 | 99,846.18 | 16,000.00 | 115,846.18 |
| Sep-21 | 18,117.25 | 16,000.00 | 34,117.25 | 96,625.33 | 16,000.00 | 112,625.33 |
| Oct-21 | 18,721.16 | 16,000.00 | 34,721.16 | 99,846.18 | 16,000.00 | 115,846.18 |
| Nov-21 | 18,117.25 | 16,000.00 | 34,117.25 | 96,625.33 | 16,000.00 | 112,625.33 |
| Dec-21 | 18,721.16 | 16,000.00 | 34,721.16 | 99,846.18 | 16,000.00 | 115,846.18 |
| | **220,426.54** | **192,000.00** | **412,426.54** | **964,310.59** | **192,000.00** | **1,156,310.59** |
| Jan-22 | 18,721.16 | 16,000.00 | 34,721.16 | 99,846.18 | 16,000.00 | 115,846.18 |
| Feb-22 | 16,909.43 | 16,000.00 | 32,909.43 | 90,183.64 | 16,000.00 | 106,183.64 |
| Mar-22 | 18,721.16 | 16,000.00 | 34,721.16 | 99,846.18 | 16,000.00 | 115,846.18 |
| Apr-22 | 18,117.25 | 16,000.00 | 34,117.25 | 96,625.33 | 16,000.00 | 112,625.33 |
| May-22 | 18,721.16 | 16,000.00 | 34,721.16 | 99,846.18 | 16,000.00 | 115,846.18 |
| Jun-22 | 18,117.25 | 16,000.00 | 34,117.25 | 96,625.33 | 16,000.00 | 112,625.33 |
| Jul-22 | 15,701.62 | 16,000.00 | 31,701.62 | 83,741.95 | 16,000.00 | 99,741.95 |
| | **125,009.02** | **112,000.00** | **237,009.02** | **666,714.79** | **112,000.00** | **778,714.79** |
| Jul-22 | 3,019.54 | - | 3,019.54 | 16,104.22 | - | 16,104.22 |
| Aug-22 | 18,721.16 | 16,000.00 | 34,721.16 | 99,846.18 | 16,000.00 | 115,846.18 |
| Sep-22 | 18,117.25 | 16,000.00 | 34,117.25 | 96,625.33 | 16,000.00 | 112,625.33 |
| Oct-22 | 18,721.16 | 16,000.00 | 34,721.16 | 99,846.18 | 16,000.00 | 115,846.18 |
| Nov-22 | 18,117.25 | 16,000.00 | 34,117.25 | 96,625.33 | 16,000.00 | 112,625.33 |
| Dec-22 | 18,721.16 | 16,000.00 | 34,721.16 | 99,846.18 | 16,000.00 | 115,846.18 |
| | **95,417.51** | **80,000.00** | **175,417.51** | **508,893.41** | **80,000.00** | **588,893.41** |
| Jan-23 | 18,721.16 | 16,000.00 | 34,721.16 | 99,846.18 | 16,000.00 | 115,846.18 |
| Feb-23 | 16,909.43 | 16,000.00 | 32,909.43 | 90,183.64 | 16,000.00 | 106,183.64 |
| | **35,630.59** | **32,000.00** | **67,630.59** | **190,029.82** | **32,000.00** | **222,029.82** |
| Late Charges | - | - | 14,764.89 | - | - | 14,764.89 |
| Legal Fees | - | - | 25,000.00 | - | - | 25,000.00 |
| Escrow | - | - | 218,868.92 | - | - | 218,868.92 |
| | **-** | **-** | **258,633.81** | **-** | **-** | **258,633.81** |
| | **532,043.23** | **464,000.00** | **1,254,677.04** | **2,385,508.18** | **464,000.00** | **3,108,141.99** |

Exhibit B

DocuSign Envelope ID: 208F5C97-799D-49E5-A955-5A933DC2315D

*Execution Version 9/16/2023*

CONFIDENTIAL COMMUNICATION PURSUANT TO FED. R. EVID. 408

~~RDN revisions 9/15/23 3:55pm~~

## SETTLEMENT AGREEMENT BY AND BETWEEN
## THE DEBTOR AND ECAPITAL LOAN FUND III LP

This Settlement Agreement (the "**Settlement Agreement**") memorializes and constitutes the settlement agreement made by and between ECapital Loan Fund III LP ("**ECapital**"), as successor-in-interest to Progressive Credit Union and Pentagon Federal Credit Union, and Outpost Pines LLC (the "**Debtor**," and together with ECapital, the "**Parties**").

**WHEREAS**, on February 23, 2023 (the "**Petition Date**"), the Debtor filed its voluntary petition ("**Voluntary Petition**") under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the case captioned *In re Outpost Pines LLC*, No. 23-70617-reg (the "**Chapter 11 Case**") in the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**"); and

**WHEREAS**, on March 1, 2023, Debtor filed its plan of reorganization ("**Plan of Reorganization**");

**WHEREAS**, the Debtor owns and, through non-Debtor affiliates, operates properties (together, the "**Debtor Real Estate Assets**") in the Fire Island Pines community (the "**Pines**"); and

**WHEREAS**, the Debtor Real Estate Assets are mixed-use and account for about 80% of the Pines commercial district, and specifically include the property: (i) at 49 & 56 Picketty Ruff Walk, Sayville, NY 11782, including the Blue Whale restaurant and bar and the Fire Island Pines Hotel (the "**Hotel**"); (ii) at 37 Fire Island Boulevard, Sayville, NY 11782, including the Pavilion building; (iii) at 28 Fire Island Boulevard, Sayville, NY 11782, including a three-bedroom, two-bathroom house that serves as a staff accommodation; and (iv) at 16 Atlantic Walk, Sayville, NY 11782, including a 16-bedroom/eight-bathroom residence that also houses resort staff in the

DocuSign Envelope ID: 208F5C97-799D-49E5-A955-5A933DC2315D

CONFIDENTIAL COMMUNICATION PURSUANT TO FED. R. EVID. 408

summer season.  The Debtor Real Estate Assets also feature 320 feet of frontage along the harbor; and

WHEREAS, ECapital's affiliate Ruff Picketty LLC owns the fee to certain property at 41-45 Picketty Ruff Walk, Sayville, NY 11782 (the "**Ground Lease Property**"); and

WHEREAS, the Debtor owns a building on the Ground Lease Property (the "**Canteen**," and together with the Debtor Real Estate Assets, the "**Debtor Properties**"); and

WHEREAS, ECapital is the owner and holder of a loan in the original principal amount of $8,000,000.00 (as assigned, the "**Loan**"), pursuant to an Amended and Restated Secured Promissory Note executed by the Debtor in favor of Progressive Credit Union dated March 31, 2015 (the "**Note**"), and accompanied by an Amended and Restated Fee and Leasehold Mortgage, Extension Agreement, Assignment of Leases and Rents, Security Agreement and Spreader Agreement, dated March 31, 2015, with Debtor as mortgagor and Progressive Credit Union (as predecessor-in-interest to ECapital) as mortgagee, securing the Note (the "**Mortgage**") which Note and Mortgage were assigned by Pentagon Federal Credit Union, as successor by merger to Progressive Credit Union to ECapital on or about November 4, 2022 by Allonge to Note and Assignment of Mortgage (the Mortgage and collectively with the Note and other loan related documents, the "**Loan Documents**" ; and

WHEREAS, on April 7, 2023 ECapital filed a proof of claim of $9,915,816.00 in the Chapter 11 Case as of the Petition Date plus future accruals against the Debtor (the "**ECapital Claim**"); and

WHEREAS, on January 19, 2022, prior to the Petition Date, Pentagon Federal Credit Union initiated a Commercial Mortgage Foreclosure Action against Debtor and other parties in the

DocuSign Envelope ID: 208F5C97-799D-49E5-A955-5A933DC2315D

CONFIDENTIAL COMMUNICATION PURSUANT TO FED. R. EVID. 408

Supreme Court of the State of New York, County of Suffolk, under the caption *Pentagon Federal Credit Union v. Outpost Pines LLC*, Index No. 601067/2022 (the "**Foreclosure Action**"); and

**WHEREAS,** on December 30, 2022, Pentagon Federal Credit Union filed an Assignment of Cause of Action in the Foreclosure Action, assigning all its right, title, and interest in the Foreclosure Action and all of the subject matter of and the claims asserted in the Foreclosure Action to ECapital; and

**WHEREAS,** on the Petition Date, a Notice of Bankruptcy with respect to Debtor was filed in the Foreclosure Action; and

**WHEREAS**, a hearing on confirmation of the Plan of Reorganization ("**Plan**") is presently pending in the Bankruptcy Court in the Chapter 11 Case; and

**WHEREAS**, to avoid the cost and uncertainty of litigation, and without any admission of liability or of any issue of fact or law, Debtor and ECapital now desire to settle amicably all matters between and amongst them relating to the ECapital Claim and other matters described in this Settlement Agreement on the terms provided herein.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are incorporated herein, and other good and valuable consideration, the sufficiency of which hereby is acknowledged, the Parties hereby agree as follows.

1.      The ECapital Claim is deemed to be an allowed secured claim and shall not be subject to setoff, defense, counterclaim or objection by the Debtor, its estate, any representative of the estate, or any other party in interest.

2.      The Debtor will engage Muroff Hospitality Group within fifteen (15) days of the date hereof to pursue a contract for the sale of the Debtor Properties and the Ground Lease Property as a package and on a going concern basis (a "**Sale**").

2393585.11

DocuSign Envelope ID: 208F5C97-799D-49E5-A955-5A933DC2315D

CONFIDENTIAL COMMUNICATION PURSUANT TO FED. R. EVID. 408

3.      ECapital agrees to accept $11,200,000.00 of sale proceeds from such Sale (the "**Breakpoint**") in full and complete satisfaction and discharge of the ECapital Claim and all other sums, if any, due by Debtor and all non-Debtor affiliates through the date of the Sale.  The Debtor will be allowed until November 1, 2024 to complete a sale of the Debtor Properties, during which time it will also manage the Debtor Properties in accordance with the Interim Management Provisions, below.  Any such Sale will be financed in accordance with the Sale Provisions, below.  If Debtor Properties are not sold by November 1, 2024, the Debtor Properties will be surrendered and relinquished to ECapital (a "**Turnover**") in accordance with the Turnover Provisions, below, in full and complete satisfaction of the ECapital Claim and all other sums, if any, due by Debtor and all non-Debtor Affiliates through the date of the Turnover.

*Interim Management Provisions:*

4.      Until November 1, 2024 or the closing of the Sale (whichever occurs first), the Debtor will continue to operate its businesses and the Debtor Properties consistent with past practice and shall continue to retain all accrued and accruing net operating income.  This includes, but is not limited to, the Debtor retaining the discretion to renew the one (1) office lease in the Hotel building first floor and the contractor office and the Tola store lease in the Canteen building as is prudent or, alternatively, operate one or more of these spaces for its own businesses.

5.      The Debtor will, at its own expense, use commercially reasonable efforts to reopen the long lapsed building permit to rebuild the Hotel.  The Debtor will not reopen the second and third floors of the Hotel due to the ongoing condemnation and is not required to rebuild the Hotel.

6.      The Debtor will be given a lease extension for the Ground Lease Property with the extension term to expire upon the earlier of November 1, 2024 or the date of the closing on the Sale for the Canteen, using the annual rent as fixed by the current Canteen lease, *i.e.*, 6% of the

2393585.11

4

DocuSign Envelope ID: 208F5C97-799D-49E5-A955-5A933DC2315D

CONFIDENTIAL COMMUNICATION PURSUANT TO FED. R. EVID. 408

appraised value of the Canteen property. The Parties agree to use the recent sale price of $1.2 million as a fair value with annual rent equal to $72,000.00. The Debtor will pay the rent in monthly installments commencing January 1, 2024.

7.    Until November 1, 2024 or the closing of the Sale (whichever occurs first), the Debtor will continue to fund the business operations (including business opening costs and business closing expenses for the Debtor Properties) and basic maintenance, bear any operational loss, and continue to retain any accrued and accruing net operating income.

8.    For the period from the Petition Date until November 1, 2024 or the closing of the Sale (whichever occurs first), the Debtor will pay monthly to ECapital interest at 3% per annum on the $7,300,000.00 unpaid principal balance of the Loan plus real estate taxes and insurance in full and complete satisfaction of its interest obligations on the Loan, subject to actual payment and clearance of such payments. The Debtor shall retain all accrued and accruing net operating income for such period.

9.    Beginning in the 2024 season (*i.e.*, April and May 2024), ECapital, at its own expense, will be allowed to have its accountant audit the Debtor's books and records on a weekly basis and, if done on-site, at a time and location reasonably designated by Debtor.

***Sale Provisions:***

10.    As part of any Sale, the real estate sales commission and closing costs will be paid from the gross sale of the Debtor Properties and will not serve as a deduction to the $11,200,000.00 due to ECapital from a Sale.

***Deed-In-Lieu and Turnover Provisions:***

11.    Within thirty (30) days after Court approval of this Agreement, Debtor shall execute and deliver to ECapital's counsel all requisite documentation and title affidavits for a deed-in-lieu

DocuSign Envelope ID: 208F5C97-799D-49E5-A955-5A933DC2315D

CONFIDENTIAL COMMUNICATION PURSUANT TO FED. R. EVID. 408

of foreclosure of the Debtor Properties ("**Deed-In-Lieu**") as prepared by ECapital and in form reasonably acceptable to Debtor. Counsel for ECapital shall hold the Deed-In-Lieu in escrow until November 2, 2024.

12.     If a sale of the Debtor Properties is not completed by November 1, 2024, on November 4, 2024, ECapital's counsel shall release the Deed-In-Lieu to ECapital and the Debtor shall surrender to ECapital possession and control of the Debtor Properties, including any and all tangible personal property located therein and thereon by no later than November 8, 2024. As part of any such Turnover, the Debtor agrees to deliver to ECapital the Debtor Properties, including any and all tangible personal property located therein and thereon. ECapital will accept the real estate components thereof in "closed for the winter" condition as is consistent with past practices of Debtor. Upon such Turnover, Debtor will be deemed to be in full and complete satisfaction of all obligations of the Debtor and the non-Debtor affiliates to ECapital.

    *Court Approval:*

13.     This Settlement Agreement shall be binding on the Debtor and ECapital as of the date of this Settlement Agreement, subject to Bankruptcy Court Approval (as defined below); provided, however, that paragraphs 15, 24, and 29 shall be binding and in full force and effect upon the Parties as of the date of this Settlement Agreement.

14.     For purposes of this Settlement Agreement, the term "**Bankruptcy Court Approval**" shall mean an order of the Bankruptcy Court, entered after notice and a hearing, approving this Settlement Agreement in a form and content that is reasonably satisfactory to Debtor and ECapital, authorizing Debtor to consummate this Settlement Agreement, including an order of the Bankruptcy Court confirming the Plan of Reorganization as amended to incorporate the Settlement Agreement (the "**Bankruptcy Court Order**"). The Bankruptcy Court Order shall

DocuSign Envelope ID: 208F5C97-799D-49E5-A955-5A933DC2315D

CONFIDENTIAL COMMUNICATION PURSUANT TO FED. R. EVID. 408

expressly include language that incorporates the terms and conditions of this Settlement Agreement as being part of the Plan of Reorganization, and shall separately include language concerning this Court's reservation of jurisdiction.

15.    Debtor shall use commercially reasonable efforts to obtain entry of the Bankruptcy Court Order, and ECapital shall use commercially reasonable efforts to cooperate with and support Debtor's efforts to obtain Bankruptcy Court Approval in all respects and shall take no actions inconsistent therewith.    In the event (a) no Bankruptcy Court Approval is granted, (b) the Bankruptcy Court Order is not in a form and content that is reasonably satisfactory to Debtor and ECapital or (c) the Bankruptcy Court Order is reversed or otherwise modified on reconsideration or appeal in a manner such that is not in a form and content that is reasonably satisfactory to Debtor and ECapital, this Settlement Agreement shall be deemed to be null and void and no Party shall have any obligations to any other Party arising out of this Settlement Agreement, save and except for the obligations and/or provisions set forth in paragraphs 24 and 29 hereof, which provisions are intended to survive the expiration or earlier termination of this Settlement Agreement.    The Parties further agree that in the event the Bankruptcy Court does not approve this Settlement Agreement, ECapital's claims (i) shall remain outstanding and subject to objection by the Debtor notwithstanding any time limitation or other applicable law or order of the Bankruptcy Court, and (ii) shall not be deemed an allowed claim.

*Other Provisions:*

16.    Prior to October 1, 2024, Debtor shall deposit the amount of $300,000.00 (the "**Escrow Amount**") by bank check or wire transfer of immediately available funds to be held in escrow by ECapital's counsel. In the event that the Escrow Amount has previously been funded as set forth above and the Debtor Properties are thereafter sold by November 1, 2024, the Escrow

DocuSign Envelope ID: 208F5C97-799D-49E5-A955-5A933DC2315D

CONFIDENTIAL COMMUNICATION PURSUANT TO FED. R. EVID. 408

Amount shall be released to ECapital and shall be applied towards the Breakpoint payment required to be delivered to ECapital. In the event that the Debtor Properties are not sold by November 1, 2024, the Escrow Amount will be released to ECapital on November 1, 2024 in addition to all of the other requirements of Debtor hereunder.

17.    The Foreclosure Action will remain stayed until November 1, 2024 or the closing of the Sale (whichever occurs first).

18.    This Settlement Agreement herein addresses only the ECapital Claim, and does not affect any other property of the Debtor's estate or affiliates or insiders of the Debtor unless expressly stated otherwise herein.

19.    This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective heirs, representatives, successors, and assigns, including a trustee appointed under chapter 7 or 11 of the Bankruptcy Code.

20.    Effective only upon (i) the receipt and clearance of the Breakpoint by ECapital or (ii) delivery (a) to ECapital of the Deed-In-Lieu transferring 100% of the interests in the Debtor's Properties and (b) any other documents, if any, necessary to transfer title to any tangible personal property operating assets of the Debtor located on or in the Debtor Properties, in consideration of the covenants, agreements and payments provided for herein, the Parties, for themselves and their respective officers, directors, managers, agents, servants, employees, parents, subsidiaries, affiliates, insurers, successors and assigns, mutually release and discharge each other, and the other's officers, members, directors, agents, servants, employees, parents, subsidiaries, affiliates, insurers, successors and assigns, from any and all claims, counterclaims, demands, damages, loss, liability, rights or causes of action of whatsoever kind and nature, at law or equity, including but not limited to any claims for costs or attorneys' fees, that were brought or could have been brought

2393585.11

8

DocuSign Envelope ID: 208F5C97-799D-49E5-A955-5A933DC2315D

CONFIDENTIAL COMMUNICATION PURSUANT TO FED. R. EVID. 408

by the Parties against each other from the beginning of time through the date of this Settlement Agreement, including all claims both known and unknown, present or future, that the parties now have, ever had, or may have hereafter against each other, relating in any way to any matters that were or could have been asserted in relation to or arising from claims that were brought, or could have been brought, in the Chapter 11 Case and/or the Foreclosure Action (collectively, the **"Released Matters"**). The release shall not (a) apply to or cover, or excuse, any breach of or default under this Settlement Agreement; or (b) prevent either Party from asserting any right and remedy of such Party in connection with any actual or threatened breach of or default under this Settlement Agreement or from otherwise enforcing the terms of this Settlement Agreement.

21.     The Debtor shall include in the amended plan a representation that to the best of its knowledge, the parties reflected on Schedules D, E/F, are all of its known creditors, including post-petition obligations.

22.     The Debtor shall include a provision in the amended plan that it will be responsible for any and all debts incurred by it up to the point of Sale or Turnover of property to ECapital.

23.     The Parties shall each bear their own costs, attorneys' fees and other fees in connection with this Settlement Agreement, the Chapter 11 Case and the Foreclosure Action, except that in the event the Debtor defaults under this Settlement Agreement in the payment of the Breakpoint or the Turnover, any further costs, attorneys' fees and other fees incurred by ECapital shall be the responsibility of the Debtor to the extent the Loan Documents provide for such relief.

24.     This Settlement Agreement shall be governed by the internal laws of the United States Bankruptcy Code and the state of New York without regard to any conflict of law provision that could require the application of the law of any other jurisdiction.

2393585.11

DocuSign Envelope ID: 208F5C97-799D-49E5-A955-5A933DC2315D

CONFIDENTIAL COMMUNICATION PURSUANT TO FED. R. EVID. 408

25.    This Settlement Agreement constitutes the entire agreement between the Parties hereto with respect to the transactions and matters contemplated herein.  It is understood and agreed that all other previous undertakings, negotiations, and agreements between the Parties hereto regarding the subject matter are superseded in their entirety by the terms herein. Notwithstanding anything to the contrary in the Settlement Agreement, to the extent not inconsistent with the Debtor's rights under the Settlement Agreement, the Debtor shall otherwise comply with the material terms of the Note and Mortgage as modified by this Settlement Agreement.

26.    Each of the Parties represents and declares that (i) in executing this Settlement Agreement, it has relied solely upon its own judgment, belief and knowledge, and on the advice and recommendations of its own independently selected counsel, concerning the nature, extent and duration of its rights and claims and that it has not been influenced to any extent whatsoever in executing the same by any representations or statements covering any matters made by any other Party hereto or by any person representing it, and (ii) it has carefully read this Settlement Agreement and knows and understands the contents hereof, and that it signed this Settlement Agreement freely and voluntarily and has had the benefit of the advice of legal counsel before executing this Settlement Agreement.  Each of the representatives executing this Settlement Agreement on behalf of their respective corporations or entities is empowered to do so and thereby binds his or her respective entity.  The Parties hereto acknowledge and agree that this Settlement Agreement shall be deemed to have been drafted jointly by the Parties hereto.  Ambiguities shall not be construed against the interest of any Party by reason of its having drafted all or any part of this Settlement Agreement.

DocuSign Envelope ID: 208F5C97-799D-49E5-A955-5A933DC2315D

CONFIDENTIAL COMMUNICATION PURSUANT TO FED. R. EVID. 408

27. Each of the Parties represents and warrants that (a) its respective rights, title and interest in the claims asserted in the Chapter 11 Case and/or Foreclosure Action have not been assigned, pledged, conveyed or transferred to any other party; (b) it is an entity as described hereinabove, duly organized, validly existing and in good standing under the laws of its state or country of formation; (c) it has the requisite power and authority to execute, deliver and perform its obligations under this Settlement Agreement; (d) the execution, delivery and performance of this Settlement Agreement have been duly authorized by all necessary corporate actions; and (e) this Settlement Agreement has been duly executed and delivered by an officer at each Party properly in office and duly authorized to do the same.

28. This Settlement Agreement cannot be amended, supplemented, or modified, nor may any provision of the settlement agreement memorialized herein be waived, except by a written instrument executed by the Parties, subject to Bankruptcy Court approval, if necessary.

29. The Bankruptcy Court shall have and retain exclusive jurisdiction to enter final orders and judgments approving and enforcing the terms of settlement set forth herein, which shall include deciding any claims or disputes that may arise or result in connection with this Settlement Agreement, any breach or default thereunder, or the transactions contemplated thereby, including, but not limited to, Turnover and the Deed. The Debtor shall include in the Bankruptcy Court Order a provision containing the foregoing retention of jurisdiction.

30. This Settlement Agreement may be signed by facsimile or other electronic transmission and in counterpart originals with the same force and effect as if fully and simultaneously signed on a single original document. Copies of signed counterparts transmitted by facsimile or other electronic transmission shall be considered original, executed counterparts for the purposes of this paragraph.

2393585.11

Dated: 9/16/2023
[DATE]

**OUTPOST PINES LLC**

By: _(signature)_

Name: _Patrick McAloon_

Title: _President_

2393585 11

**ECAPITAL LOAN FUND III LP**

By:

Name:

Title:

8126844.1

DocuSign Envelope ID: 208F5C97-799D-49E5-A955-5A933DC2315D

CONFIDENTIAL COMMUNICATION PURSUANT TO FED. R. EVID. 408

Dated: [DATE]

**OUTPOST PINES LLC**

By: _____
Name:
Title:

**ECAPITAL LOAN FUND III LP**

By: _Ryan Buchman_
Name: Ryan Buchman
Title: Principal

2393585.11